

**Dated: April 29, 2025.**

_Christopher G. Bradley_

**CHRISTOPHER G. BRADLEY**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| **ALEJANDRO HERNANDEZ, JR.,** | § | **Case No. 23-31322** |
| Debtor. | § | **Chapter 7** |
| **ALEJANDRO HERNANDEZ, JR.,** | § | |
| Plaintiff, | § | |
| v. | § | **Adv. No. 24-03018-cgb** |
| **GMH OF EL PASO, LLC dba MESA PAWN AND JEWELRY,** | § | |
| Defendant. | § | |

### OPINION AND ORDER GRANTING MOTION TO DISMISS

#### Introduction

The debtor initiated this adversary proceeding[1] on an incorrect belief that the defendant pawn shop violated the automatic stay by losing or melting for scrap certain jewelry that the debtor had pawned for loan before filing for bankruptcy.

---

[1]   Docket citations to the adversary proceeding (No. 24-03018) will be to "Adv. Dkt. No. __" and docket citations to the main bankruptcy case (No. 23-31322) will be to "ECF No. __."

After learning from the pawn shop that his jewelry was intact and available to him to redeem, the debtor amended his complaint to allege the pawn shop violated the automatic stay by changing its designation of the jewelry in its business records while the automatic stay was in effect.

The Court determines—applying a summary judgment standard, which views the facts in the light most favorable to the non-movant debtor—that the debtor has not produced sufficient evidence to support his requested relief for actual or punitive damages. The Court will enter judgment for the pawn shop.

## Jurisdiction and Authority

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding to determine whether there has been a violation of the automatic stay.[2] Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

Defendant GMH of El Paso, LLC, dba Mesa Pawn and Jewelry (the "Pawn Shop") consents to this Court entering a final order and judgment in this matter;[3] plaintiff Alejandro Hernandez, Jr. ("Mr. Hernandez") does not.[4] Instead, Mr. Hernandez has requested this adversary proceeding be decided by jury trial.[5]

While a debtor does not automatically lose the right to a jury trial upon the commencement of a bankruptcy case, that right does not extend to an equitable proceeding in causes of action that arise under the Bankruptcy Code, such as this one.[6] The Court has constitutional authority to determine this matter because it is purely a matter of bankruptcy law and does not require the resolution of any matter similar to "the stuff of the traditional actions at common law tried by the courts at

---

[2]     *See Bruecks v. Nationstar Mortg., LLC (In re Bruecks)*, 653 B.R. 187, 190 (Bankr. W.D. Okla. 2023) (citations omitted) ("Although a violation of the automatic stay is not specifically designated as a core proceeding under § 157, any rights arising from a violation of the automatic stay are substantive rights created by the Bankruptcy Code and are thus quintessentially core matters."); *see also Byman v. RRL Cap. Invs., LLC (In re Providence Hosp. of N. Houston LLC)*, 653 B.R. 612, 621 (Bankr. S.D. Tex. 2023) (finding that section 362(k) proceeding is core matter affecting administration of bankruptcy estate).

[3]     Adv. Dkt. No. 26, Defendant's Statement Regarding Consent.

[4]     Adv. Dkt. No. 23, Plaintiff's Notice Regarding Consent.

[5]     Adv. Dkt. No. 22, Amended Complaint ¶ 12.

[6]     *See, e.g.*, *Gaines v. Thomas (In re Thomas)*, 235 B.R. 864, 865–66 (Bankr. N.D. Tex. 1999) (declining request for jury trial in action to determine dischargeability of debt).

Westminster in 1789."[7] Thus, this Court may enter a final order and judgment in this section 362(k) matter.

## Procedural Background

On May 31, 2024, Mr. Hernandez, the *pro se* debtor in the underlying bankruptcy case, initiated this adversary proceeding, which alleges that the Pawn Shop violated the automatic stay.[8] On September 19, 2024, the Pawn Shop filed an answer.[9] On September 23, 2024, Mr. Hernandez filed an amended complaint.[10]

On December 17, 2024, the Pawn Shop filed the instant Motion to Dismiss.[11] After Mr. Hernandez failed to timely file a response, the Court entered a scheduling order on the Motion to Dismiss,[12] which construed the Motion to Dismiss as a motion for summary judgment.[13] On February 27, 2025, Mr. Hernandez filed a response[14] to the Motion to Dismiss. The Pawn Shop did not file a reply. The Motion to Dismiss—construed as one for summary judgment—will be granted for the reasons set forth below.

## Factual Background

On December 12, 2023 (the "Petition Date"), Mr. Hernandez filed a voluntary petition under chapter 7 of the Bankruptcy Code.[15] The bankruptcy case proceeded ordinarily and on April 11, 2024, a discharge order was entered.[16]

Among his assets, Mr. Hernandez scheduled jewelry with an estimated value of $25,300.00 and stated: "I have jewelry in storage units and in 4 different pawn

---

[7]   *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)).

[8]   Adv. Dkt. No. 1, Original Complaint.

[9]   Adv. Dkt. No. 18, Answer.

[10]  Adv. Dkt. No. 22, Amended Complaint.

[11]  Adv. Dkt. No. 29, Motion to Dismiss.

[12]  Adv. Dkt. No. 30, Scheduling Order on Motion to Dismiss.

[13]  The Court treated the Motion to Dismiss as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7012(b). *See, e.g.*, *Pena v. Wells Fargo Bank, N.A. (In re Pena)*, 409 B.R. 847, 855 (S.D. Tex. 2009) (citation omitted) (stating that a motion to dismiss is properly taken as one for summary judgment if "the court looks outside the four corners of the complaint and considers evidence").

[14]  Adv. Dkt. No. 32, Response to the Motion to Dismiss.

[15]  ECF No. 2, Voluntary Petition.

[16]  ECF No. 46, Discharge Order.

shops in El Paso, TX."[17] Mr. Hernandez scheduled the Pawn Shop with a secured claim of $1,600.00 against collateral described as jewelry (the "Pawned Jewelry") with an estimated value of $12,400.00.[18] While Mr. Hernandez did not claim his right to redeem the Pawned Jewelry as exempt,[19] the trustee did not administer it and thus, when the case was closed on October 24, 2024, any actual value in the right to redeem the Pawned Jewelry was abandoned back to Mr. Hernandez.[20]

Mr. Hernandez admits that in early 2024, he stopped making payments to the Pawn Shop.[21] He avers that he had not lost his rights to the Pawned Jewelry as he was still paying on loan extensions up to a month after the Petition Date.[22] Notwithstanding having filed for bankruptcy in December 2023 and ceasing payments to the Pawn Shop in early 2024, Mr. Hernandez first provided the Pawn Shop with a written Notice of Bankruptcy on February 26, 2024.[23]

Mr. Hernandez alleges that, on April 16, 2024—five days after the Discharge Order had been entered and thus the automatic stay lifted—he went to the Pawn Shop to redeem the Pawned Jewelry but was told by an employee that the Pawned Jewelry had been "lost" or "melted for scrap gold and diamonds" on April 5, 2024, before the automatic stay lifted.[24] He claims to have gone to the Pawn Shop again on April 24, 2024, and received the same information.

As it turned out, the information alleged to have been communicated by the Pawn Shop's employees was incorrect. The Pawn Shop's principal appeared at the August 28, 2024, hearing on Mr. Hernandez's Motion for Default Judgment and explained that the Pawned Jewelry was still intact and in the Pawn Shop's

---

[17] ECF No. 17, Schedule A/B at 12.
[18] ECF No. 17, Schedule D, Part 1 at 2.2.
[19] See Prado v. Cash Am. Advance, Inc. (In re Prado), 340 B.R. 574, 579 (Bankr. S.D. Tex. 2006) (observing that "any rights the Debtor had under the pawn transaction," rather than the pawned property itself, becomes property of 11 U.S.C. § 541(a)).
[20] The Trustee's Report of No Distribution represents the estate was fully administered with no value being recovered by the bankruptcy estate. ECF No. 51. Mr. Hernandez's Chapter 7 bankruptcy case was closed on October 25, 2024. The estate's interest in the Pawned Jewelry, which had not been administered, was thereby abandoned to the debtor. 11 U.S.C. § 554(c).
[21] Mr. Hernandez claims this was February 17, 2024. Adv. Dkt. No. 22, Amended Complaint ¶ 3. The owner of the Pawn Shop states, to the contrary, that no payments have been made since January 5, 2024. Adv. Dkt. No. 29 at 4. The Debtor does not refute this statement. Adv. Dkt. No. 32, Ex. 1.
[22] Adv. Dkt. No. 22, Amended Complaint ¶ 3.
[23] Id. ¶ 4.
[24] Id. ¶ 7.

possession, available for Mr. Hernandez to redeem.[25] The Pawn Shop again affirmed that it was in possession of the Pawned Jewelry in an affidavit dated December 17, 2024, attached to the Motion to Dismiss (the "Pawn Shop Affidavit").[26]

After finding out his Pawned Jewelry had not been lost or scrapped for value, Mr. Hernandez filed the Amended Complaint reframing the alleged stay violation. The Amended Complaint asserts a stay violation occurred by the Pawn Shop's willful failure to quickly resolve this matter after learning of the Pawned Jewelry's disposition, thereby causing Mr. Hernandez to needlessly expend time and resources.[27] Specifically, Mr. Hernandez asserts the following damages: (i) 20 hours of his own time spent pursuing this claim; (ii) the costs and expenses in bringing the claim; (iii) a deprivation of the right to use and enjoy the Pawned Jewelry; (iv) lost earnings for his time, which could have been spent earning income; (v) inconvenience and emotional distress; (vi) punitive damages for the willful violation; and (vii) attorney fees, if any.[28]

In the Motion to Dismiss, the Pawn Shop maintains that there was no stay violation because the Pawned Jewelry was not lost.[29] The Pawn Shop represents that Mr. Hernandez has not made any payments on the underlying loans since January 5, 2024, and that the debt remains unpaid and accruing interest.[30] The Pawn Shop further asserts that Mr. Hernandez is not entitled to any attorney fees because he is not a licensed attorney.[31]

Considering that the originally alleged stay violation was based on a mistake of fact, it became difficult to perceive how any significant damages could exist in

---

[25]  *See* Adv. Dkt. No. 18, Answer ¶ 7; Adv. Dkt. No. 19 at 1.
[26]  Adv. Dkt. No. 29 at 4.
[27]  Adv. Dkt. No. 22, Amended Complaint ¶¶ 9–11.
[28]  *Id.* ¶¶ 9–11, G.
[29]  Adv. Dkt. No. 29, Motion to Dismiss ¶ VIII.
[30]  *Id.* ¶¶ V, IX; *see also* Pawn Shop Affidavit (providing evidence in support of this assertion).
[31]  Adv. Dkt. No. 29, Motion to Dismiss ¶ X.

this case. Among other things, there appeared to be nothing preventing Mr. Hernandez from simply redeeming the Pawned Jewelry if he still wanted it.[32]

Mr. Hernandez did not respond to the Motion to Dismiss within the time provided by the governing local rules.[33] Despite this failure to respond—and despite the Court's increasing doubts about his theory of damages in particular, but mindful of its responsibility to be fair to self-represented litigants[34]—the Court entered the Scheduling Order on Motion to Dismiss articulating its concerns and providing instructions to the parties. The Scheduling Order on Motion to Dismiss was issued to help guide the parties' submissions and most importantly, to permit Mr. Hernandez an opportunity to "*submit summary judgment evidence sufficient to show at least a fact issue as to his damages.*"[35]

Mr. Hernandez's Response to the Motion to Dismiss clarifies that this action intends to allege a stay violation occurred on April 5, 2024, when the Pawn Shop pulled the Pawned Jewelry from inventory and designated it to be melted for scrap[36] (even though, as the Pawn Shop Affidavit establishes, it was never actually disposed of). Mr. Hernandez asserts that because it is unknown whether or not this violation actually occurred on April 5, 2024, there exists a genuine issue of material fact in this case which prevents granting summary judgment for the Pawn Shop.[37] Mr. Hernandez explains that if this violation occurred, then it directly caused him

---

[32]  The oddness of this case is underlined by the fact that by the time Mr. Hernandez actually sought to redeem the Pawned Jewelry, the automatic stay had already expired and thus the Pawn Shop likely could have disposed of the Pawned Jewelry anyway, under state law, given the loan had been delinquent since January 2, 2024. *See* Pawn Shop Affidavit. In other words, while it could conceivably have been a stay violation to dispose of the Pawned Jewelry on April 5, 2024, as the Pawn Shop's staff apparently claimed to have done, by contrast, it likely *could* have disposed of the Pawned Jewelry on April 12, 2024, after the stay lifted. Because Mr. Hernandez does not claim to have gone into the Pawn Shop to redeem until April 16, 2024, he would not have known the difference. In other words, if the Pawn Shop staff had simply not mentioned the date of the alleged disposal of the Pawned Jewelry or had stated a disposal date of April 12–15, 2024, Mr. Hernandez would likely have had no grounds at all on which even to allege a stay violation.

[33]  Local Rule 7007(b)(2) (now superseded).

[34]  *See Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002) (explaining that self-represented party's pleadings should be "liberally construed" to avoid inequitable effect of punishing them for "lacking the linguistic and analytical skills of a trained lawyer in deciphering the requirements of the United States Code").

[35]  Adv. Dkt. No. 30, Scheduling Order on Motion to Dismiss at 5.

[36]  Adv. Pro. No. 32, Response to the Motion to Dismiss at 3 n.1.

[37]  *Id.* at 3.

injury as "such act served to deprive and did deprive Mr. Hernandez from redeeming the Jewelry on April 16, 2024."[38]

Despite being instructed, in *italicized* text, in the Scheduling Order on Motion to Dismiss to "*submit summary judgment evidence sufficient to show at least a fact issue as to his damages*," the only evidence the Debtor submitted, an affidavit providing one paragraph of his own statements (the "Hernandez Affidavit"),[39] does not do so.

First, Mr. Hernandez does not even attempt to quantify the actual damages resulting from the asserted, temporary deprivation of the use of Pawned Jewelry between April 16, 2024 (the earliest he could have gotten the Pawned Jewelry back) and August 28, 2024 (when he learned on the record that the Pawned Jewelry had not, in fact, been disposed of and therefore could still be redeemed). He provides *no* evidentiary support for damages based on this short deprivation of the right to redeem his jewelry. As a matter of calculation, it is important to note that any damage for deprivation of enjoyment during this four-month period must also take account of the fact that he would presumably have had to pay back the loan balance (which his schedules stated was $1,600 as of the Petition Date and was no doubt higher after months of non-payment) before being allowed to recover the Pawned Jewelry and begin to enjoy it. In other words, any damages from right to enjoy the jewelry would have had to be offset against the right to enjoy the loan balance during that four-month period.

Mr. Hernandez also sought actual damages for the stay violation for the "costs, expense, and emotional distress that comes with litigating."[40] Once again, the Hernandez Affidavit neither attempts to quantify the actual damages resulting from the costs, expense, and emotional distress associated with this litigation nor does it provide evidentiary support for such damages.

Lastly, Mr. Hernandez provides no additional facts relevant to his request for punitive damages.

---

[38]  *Id.*
[39]  Adv. Dkt. No. 32, Ex. 1, Affidavit of Alejandro Hernandez.
[40]  Adv. Dkt. No. 32 at 3–4.

## Analysis

The Court construes the Pawn Shop's Motion to Dismiss as one for summary judgment pursuant to Rule 56.[41] Summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[42] A fact is material if it "might affect the outcome of the suit under the governing law."[43] This standard of review does not merely ask the court to determine "whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon evidence before the court."[44] To defeat a motion for summary judgment, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial."[45] In determining a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant.[46]

Section 362(k) of the Bankruptcy Code sets forth the remedies available to individuals harmed by willful violations of the automatic stay. It permits the recovery of "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, [a harmed individual] may recover punitive damages."[47] Taking the disputed facts in the light most favorable to the non-movant, the Court will assume it is true the Pawn Shop violated the automatic stay on April 5, 2024, by acting to designate in its business records the Pawned Jewelry as melted for scrap (the "Stay Violation"), even though this designation was in fact false.

Mr. Hernandez was expressly provided with an opportunity to support his argument for actual damages based upon the Stay Violation causing his deprivation of ability to redeem the Pawned Jewelry between April 16, 2024, and August 28, 2024. As explained in the preceding section, no evidence of such damages has been

---

[41] Fed. R. Civ. P. 56; Fed. R. Bankr. P. 7056.

[42] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[43] *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[44] *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[45] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007) (citation omitted).

[46] *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).

[47] 11 U.S.C. § 362(k).

presented. No rational trier of fact could find for Mr. Hernandez on his request for actual damages caused by this deprivation.

Mr. Hernandez was also provided the chance to show that he is entitled to actual damages in the form of costs or attorney fees resulting from the Stay Violation. Specifically, Mr. Hernandez has requested to be compensated for his lost time from work, which he asserts resulted in lost earnings, and additionally asks for attorney fees. But again, having been expressly instructed to come forward with evidence, Mr. Hernandez has presented no evidence of damages caused by lost work time and no evidence of incurring attorney fees in this matter. Further, Mr. Hernandez presents no evidence or legal precedent to support a diversion from the Fifth Circuit's general rule "not to award statutorily mandated attorneys' fees to pro se litigants."[48] While it is true that without legal representation, Mr. Hernandez may have spent some (unknown) amount of time pursuing this matter, he decided on this course. In the lack of competent and relevant evidence, no rational trier of fact could find for Mr. Hernandez on his request for actual damages of costs and attorney fees.

In the interest of thoroughness, the Court will briefly address the Amended Complaint's request for emotional damages resulting from the Stay Violation. Mr. Hernandez offers no evidence or explanation as to what the emotional damages may be. The Fifth Circuit has adopted a heightened standard for granting emotional damage awards under section 362(k), which requires that the emotional injury be "linked to some other financial injury" and that any asserted emotional damages be "supported by 'specific information' rather than 'generalized assertions.'"[49] Here, Mr. Hernandez's request for emotional damages are vague assertions at best, because Mr. Hernandez has not attempted to identify the emotional damage, much less link it to some other financial injury. Hence, no rational trier of fact could find for Mr. Hernandez on his request for an emotional damages award.

Having determined that Mr. Hernandez has failed to establish the existence of any actual damages resulting from the Stay Violation, the Court is left to determine whether this could be an appropriate circumstance to award punitive damages. Section 362(k) permits punitive damages "in appropriate circumstances," and the

---

[48] *Vaidya v. Choudhary (In re Vaidya)*, No. 19-3592, 2021 WL 389086, at *9 (Bankr. S.D. Tex. Feb. 3, 2021) (quoting *McLean v. Int'l Harvester Co.*, 902 F.2d 372, 375 (5th Cir. 1990)).

[49] *Young v. Repine (In re Repine)*, 536 F.3d 512, 521 (5th Cir. 2008) (quoting *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 879–80 (7th Cir. 2001)).

Fifth Circuit has adopted a standard which "require[s] 'egregious, intentional misconduct on the violator's part.'"[50] Conduct warranting punitive fees typically involves a violator with knowledge of the bankruptcy to have done one or more of the following: (i) repeatedly ignored requests to maintain the status quo of or to relinquish estate property; (ii) converted estate property via sale or destruction; (iii) taken steps to cover-up their violation; or (iv) ignored or frustrated the stay violation proceeding.[51]

This case does not approach the sort of circumstances in which punitive damages might be warranted. The Court finds the facts of this case to be most akin to those in *In re Monge*, in which the Fifth Circuit determined it was not egregious conduct to maintain possession of certain property where no notice was provided that its actions violated the automatic stay and a genuine belief of a right to possession existed.[52] As Mr. Hernandez had not paid the pawn loan for which the Pawned Jewelry served as collateral, the Pawn Shop held a right to possession for the entire time the automatic stay remained in effect. Once the automatic stay lifted, the Pawn Shop had the right to whatever remedies it might have under state law. Given the lengthy period of non-payment, this likely means it could have disposed of the jewelry as it wished—before Mr. Hernandez even came to try to redeem the

---

[50] *Id.* (citation omitted).

[51] *See United States v. Lile (In re Lile)*, 161 B.R. 788, 792 (S.D. Tex. 1993) (determining IRS's actions were reckless and in "arrogant defiance" of the bankruptcy stay when it ignored proof of lease rights to a building and moved forward to chain and padlock the entrance); *Burrell v. Auto-Pak-USA (In re Burrell)*, No. 10-03386, 2012 WL 3727130, at *14 (S.D. Tex. Aug. 27, 2012) (finding bankruptcy court did not abuse its discretion by finding egregious conduct where auto dealer ignored multiple requests for turnover, sold a vehicle knowing it was estate property, and altered the transaction record date in an effort to avoid the finding of a stay violation); *Lewis v. Money Mayday Loans (In re Lewis)*, No. 18-3016, 2019 WL 2158832, at *11 (Bankr. W.D. La. May 16, 2019) (finding punitive damages appropriate where repeated demands to relinquish estate property were ignored); *In re Adams*, 516 B.R. 361, 374–75 (Bankr. S.D. Miss. 2014) (finding it egregious for party to ignore or refuse to participate in stay violation litigation against him with a provided explanation that it "was [debtors] problem, not his"); *cf. Monge v. Rojas (In re Monge)*, 826 F.3d 250, 256 (5th Cir. 2016) (agreeing that it was not egregious conduct to maintain possession of estate property where no notice was provided that their actions violated the stay and where they believed they had a right to possession); *see also House v. Craft Auto Sales, LLC (In re House)*, No. 16-06026, 2017 WL 2579026, at *5 (Bankr. S.D. Miss. June 14, 2017) (finding conduct not to be egregious where creditor entered into good faith negotiations with debtor before the communications broke down).

[52] *In re Monge*, 826 F.3d at 256.

Pawned Jewelry on April 16.[53] At that point, the alleged stay violation here is minor: the Pawn Shop's staff is alleged to have wrongly told the Debtor that it had marked the jewelry for disposal in its internal records while the stay was in effect (instead of a few days later, when such marking would have been perfectly acceptable); but in any case, it did not actually dispose of the jewelry *even after the stay had expired* and before the Debtor had sought to redeem the jewelry. At the time of the Pawn Shop Affidavit in December 2024, the Pawn Shop still had the Pawned Jewelry on hand, and Mr. Hernandez had still made no payments since January 2024.

Further, there is an absence of other indicators of any egregious conduct. Here, the Pawn Shop has not ignored repeated requests to relinquish the Pawned Jewelry; it claims in fact to have held the Pawned Jewelry available for Mr. Hernandez to redeem since late August 2024, despite apparent continued non-payment by Mr. Hernandez and the lack of an automatic stay preventing it from exercising its state law remedies.[54] Nor has the Pawn Shop attempted to cover up any of its actions. Additionally, the Pawn Shop has meaningfully participated in this litigation and generally cooperated with the requirements of the Bankruptcy Code. Simply stated, there is no evidence of any egregious conduct by the Pawn Shop that would warrant punitive damages in this matter.

The Pawn Shop's actions in this case have not been perfect, but neither have Mr. Hernandez's. Mr. Hernandez has been provided substantial opportunity to provide support for the relief he seeks but has failed to proffer any tangible evidence of any damages suffered by him. Construing the Motion to Dismiss as one for summary judgment under Federal Rule of Civil Procedure 56, the Court determines that Mr. Hernandez has failed to provide sufficient evidence that he would be entitled to either actual damages or punitive damages if he were to succeed in showing a stay violation occurred. Therefore, the Court finds there is no material triable issue in this case as the determination of the stay violation would not result in any damages and therefore would have no effect on the outcome of the litigation.

---

[53]   TEXAS FIN. CODE § 371.169 (amended 2001) (permitting pawn shop to dispose of pawned merchandise after 30-day grace period, which starts to run on maturity date of transaction); *see also* 7 TEX. ADMIN. CODE § 85.414 (2000) (governing the forfeiture of pledged goods).

[54]   To be clear, the Court does not intend to indicate that further retention of the Pawned Jewelry is necessary; if Mr. Hernandez has chosen not to redeem the Pawned Jewelry in the eight months since learning that it was available, bankruptcy law imposes no obligation on the Pawn Shop to continue to refrain from exercising its state law remedies.

**Conclusion**

**FOR THESE REASONS, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion to Dismiss (Adv. Dkt. No. 29) filed by GMH of El Paso, LLC dba Mesa Pawn and Jewelry is GRANTED. Final judgment will issue shortly.

# # #